IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | § | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | Case No. 6:20-cr-52-JDK |
| | § | |
| RAMIRO ORTIZ PEREZ | § | |
| | § | |

**MEMORANDUM OPINION**

On May 4, 2021, the Court sentenced Defendant Ramiro Ortiz Perez for violating 18 U.S.C. § 922(g)(5)(A). The Court also sustained an objection raised by the Government to the Presentence Investigation Report (PSR). This Order explains the reasons for the Court's ruling on the objection.

**I. BACKGROUND**

As stated in the PSR, on the night of the incident in question, Defendant drove his truck to a restaurant to collect a debt from Justino Betancourt. Defendant's wife testified that Perez sold cocaine and she "believed [the debt] was from the sale of cocaine." Docket No. 39 at ¶ 12. This is the same truck in which Defendant's wife would sometimes "place illegal narcotics" to aid Defendant in drug trafficking. *Id.* Betancourt's friend, who was present at the restaurant, similarly testified that Defendant accused Betancourt of owing him money and indicated he had a handgun in his waistband. *Id.* at ¶ 10. After displaying his firearm, Defendant drove home, went inside, and then returned to his truck, where he was sitting when Betancourt arrived. *Id.* at ¶¶ 10, 12.

1

A confrontation occurred, Defendant shot Betancourt at least once, and Betancourt later died. *Id.* at ¶ 10. Defendant left the scene. *Id.* at ¶ 9. Upon execution of a state search warrant, law enforcement discovered firearms—but not drugs or drug paraphernalia—in Defendant's bedroom. *Id.* at ¶¶ 8, 22. State police issued an arrest warrant for Defendant for the charge of murder. *Id.* at ¶ 16. Defendant voluntarily surrendered. *Id.* Upon determining that the shooting was an act of self-defense, the state declined to prosecute. *Id.* at ¶ 39. Defendant, who is present in the United States illegally, was then indicted by a Federal Grand Jury for violating 18 U.S.C. § 922(g)(5)(A), Possession of a Firearm and Ammunition by a Prohibited Person. *Id.* at ¶¶ 1–2.

Defendant later pleaded guilty to the federal charge. Docket No. 29 at ¶ 2. In the plea agreement, the parties stipulated to: (1) a base offense level of 14 pursuant to U.S.S.G. § 2K2.1(a)(6)(A) because Defendant was a prohibited person at the time of the offense, (2) a two-level increase pursuant to § 2K2.1(b)(1)(A) because Defendant possessed three firearms, (3) a four-level increase pursuant to § 2K2.1(b)(6)(B) because Defendant possessed the firearm in connection with another felony offense, that is, drug trafficking, and (4) a reduction of three levels for acceptance of responsibility under § 3E1.1. *Id.* at ¶ 5. The plea agreement noted that the Court is not bound by these stipulations. *Id.*

U.S. Probation prepared an initial PSR, which likewise calculated the base offense level as 14, increased Defendant's offense level by two because of the three firearms involved, and decreased Defendant's offense level by a total of three points

2

for acceptance of responsibility. Docket No. 36 at ¶¶ 21–22, 29–30. But Probation declined to increase Defendant's offense level by four for the firearm's usage "in connection with" another felony offense. *Id.* at ¶ 23. Based on a total offense level of 13 and a criminal history category of I, the initial PSR stated that the advisory guideline imprisonment range for Defendant was 12 to 18 months. *Id.* at ¶ 58.

On February 12, 2021, the Government filed a written objection to the initial PSR. Docket No. 37. The Government objected to Probation's failure to apply the four-level enhancement for the firearm's usage "in connection with" another felony offense under U.S.S.G. § 2K2.1(b)(6). *Id.* at 2. Defendant responded, arguing that "the exclusion of the four-level adjustment is appropriate as stated by probation in the PSR[,]" while admitting that "during plea negotiations with the Government, counsel agreed that although the connection between possession of the firearm in the commission of another felony offense was tenuous, there was sufficient information to subject Mr. Ortiz Perez to the four-level adjustment." Docket No. 38 at 2.

Having reviewed the PSR, the parties' briefing, and the relevant case law, the Court concludes that the four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B) is applicable in this case.

## II. LEGAL STANDARD

Per the Sentencing Guidelines, courts must "apply the 'in connection with' enhancement if possession of a firearm 'facilitated . . . or had the potential of facilitating' another felony offense." *United States v. Pimpton*, 589 Fed. App'x 692, 694 (5th Cir. 2014) (per curiam) (quoting U.S.S.G. § 2k2.1, cmt. n.14(A)). "Whether

3

defendant possessed a firearm in connection with another felony for purposes of § 2K2.1(b)(6)(B) is a factual finding." *United States v. Johnson*, 760 Fed. App'x 261, 263 (5th Cir. 2019) (per curiam) (citing *United States v. Coleman*, 609 F.3d 699, 708 (5th Cir. 2010)). "The Government must establish this requisite connection by a preponderance of the evidence, and the issue is one of fact for the district court." *Pimpton*, 589 Fed. App'x at 694; *see also Gray v. United States*, 3:13-cv-3542-L, 2014 WL 1724444, at *4 (N.D. Tex. Apr. 30, 2014).

Application of the Sentencing Guidelines to the established facts is a question of law. *United States v. Jones*, 752 F.3d 1039, 1040 (5th Cir. 2014) (citing *United States v. Stoker*, 706 F.3d 643, 645–46 (5th Cir. 2013)). "[A]t sentencing, a district court must rule on any objection to the PSR[.]" *United States v. King*, 773 F.3d 48, 52 (5th Cir. 2014) (citing Fed. R. Crim. P. 32(i)(3)(B)).

### III. ANALYSIS

In the initial and final PSRs, Probation declined to apply § 2K2.1(b)(6)(B)'s four-level enhancement because, after reviewing the Government's discovery, Probation was "of the opinion there is no nexus between the firearm possessed by the defendant on July 3, 2020, and any drugs the defendant may have possessed at any point prior to that date." Docket Nos. 36 at ¶ 61; 39 at ¶ 61. The Government objected, arguing that, while the four-level enhancement applies when a firearm is found "in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia" pursuant to Note 14(B)(ii), courts have found that "'close proximity'

4

is not the only circumstance under which the increase applies." Docket No. 37 at 2–4.

Under U.S.S.G. § 2K2.1(b)(6)(B), a four-level enhancement is applicable if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense[.]" U.S.S.G. § 2K2.1(b)(6)(B). The U.S. Sentencing Commission's Application Note 14 explains that § 2K2.1(b)(6)(B)'s four-level enhancement generally applies if "the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." § 2K2.1(b)(6)(B) cmt. n.14(A).[1] And, "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia[,]" the four-level enhancement applies because "the presence of the firearm has the potential of facilitating another felony offense or another offense, respectively." *Id.* cmt. n.14(B)(ii).

Based upon the undisputed facts in the PSR, the Court finds that Defendant's firearm facilitated another felony offense, namely drug trafficking. As the PSR stated, Defendant used his firearm when collecting a debt purportedly owed by Justino Betancourt. Docket No. 39 at ¶ 10. Defendant's wife, who sometimes assisted Defendant in drug trafficking, believed the debt was a drug debt, incurred

---

[1] The commentary, which interprets and explains the Sentencing Guidelines, is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *United States v. Roussel*, 705 F.3d 184, 195 n.9 (5th Cir. 2013) (quoting *Stinson v. United States*, 508 U.S. 36, 38 (1993)).

5

by a cocaine sale. *Id.* at ¶ 12. The conflict between Defendant and Betancourt ultimately resulted in Defendant's discharging his firearm, shooting Betancourt at least once. *Id.* at ¶ 10. Defendant's truck, moreover, was central to his drug-trafficking operation: his wife sometimes placed illegal narcotics in the vehicle for distribution, he drove the truck—while armed—to collect the debt, and was waiting—armed—in the truck when Betancourt arrived at his home and fighting erupted. *Id.* at ¶¶ 10, 12.

The Court's finding is bolstered by the parties' plea agreement (Docket No. 29), in which they expressly agree that a "four-level increase pursuant to § 2K2.1(b)(6)(B)" applies to Defendant's case because "the defendant possessed the firearm in connection with another felony offense, that is, drug trafficking[.]" Docket No. 29 at ¶ 5(b)(2). As defense counsel stated in responding to the Government's objection to the PSR: "In complete candor with the Court, it should be reiterated that during plea negotiations with the Government, counsel agreed that although the connection between possession of the firearm in the commission of another felony offense was tenuous, there was sufficient information to subject Mr. Ortiz Perez to the four-level adjustment." Docket No. 38 at 2.

The Court's finding is also supported by the Fifth Circuit's recent application of Note 14(A) when evidence linked a defendant's firearm to his vehicle and linked the vehicle to drug sales. *United States v. White*, 842 Fed. App'x 894, 900–01 (5th Cir. 2021) (per curiam). In *White*, the court affirmed the application of the four-level enhancement under § 2K2.1(b)(6)(B) because "the firearm was found in [the

defendant's] vehicle" and "the PSR clearly states that [the defendant] traveled to both of the arranged drug sales" in the vehicle. *Id.* (citing U.S.S.G. § 2K2.1, cmt. n.14(A)). Similarly, here, the evidence links both Defendant Perez's firearm and his drug transactions to his truck.

Defendant argues that the enhancement should not apply because no drugs or related materials were found on his person, in his truck, or inside his home. Docket No. 38 at 3–5. Defendant cites Note 14(B)(ii), which provides that § 2k2.1(6)(B) applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." U.S.S.G. § 2K2.1, cmt. n.14(B)(ii); *see* Docket No. 38 at 2. The Fifth Circuit, however, has held that Note 14(B)(ii) is "one way in which a gun can facilitate a drug trafficking offense, [but] not the only way." *United States v. Caldwell*, 770 Fed. App'x 175, 177 (5th Cir. 2019) (per curiam); *accord White*, 842 Fed. App'x at 901. Because, as stated above, the evidence indicates that Defendant's firearm "facilitated, or had the potential of facilitating" drug trafficking, the Court accepts the parties' Plea Agreement, including the application of the four-level enhancement under § 2k2.1(6)(B).

## III. CONCLUSION

In sum, the Court sustained the Government's objection and applied the four-level enhancement as provided by U.S.S.G. § 2k2.1(6)(B). This resulted in a total offense level of 17 and a criminal history category of I, which provided for an advisory guideline range of 24 to 30 months' imprisonment. After consulting the factors set

7

forth in 18 U.S.C. § 3553(a), the Court sentenced Defendant to 30 months' imprisonment and three years of supervised release.

So **ORDERED** and **SIGNED** this **6th** day of **May, 2021.**

_____
JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE